IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEX PETERSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-4669 |
| | : | |
| C/O KEISHA WATSON, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**ROBRENO, J.**                                                                 **APRIL 11, 2022**

Plaintiff Alex Peterson, a convicted prisoner currently incarcerated at SCI-Phoenix, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Peterson has also filed a Motion for Leave to Proceed *In Forma Pauperis* together with an inmate account statement, and a "Motion to Have Complaint Served on all Parties and IFP Considerations.". (ECF Nos. 4, 5, 8.) For the following reasons, the Court will grant Peterson leave to proceed *in forma pauperis* and permit him to proceed on his First Amendment retaliation claims against the named Defendants and his Eighth Amendment cruel and unusual punishment claims against Defendants Elby and Kennizan. Peterson's Fourteenth Amendment due process claim and his official capacity claims against the named Defendants will be dismissed with prejudice. His motion to have complaint served will be granted consistent with this opinion.

**I.    FACTUAL ALLEGATIONS**[1]

Peterson's claims arise from events that allegedly occurred while he was incarcerated at SCI-Phoenix. (ECF No. 2 at 3.) Peterson names the following Defendants, all of whom are

---

[1] The allegations set forth in this Memorandum are taken from Peterson's Complaint and exhibits thereto. The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

alleged to be employed by SCI-Phoenix: Corrections Officer ("CO") Trainee Keisha Watson, CO John Doe Elby, and CO John Doe Kennizan, all of whom are sued in their individual and official capacities. (*Id.* at 2-3.) Although the precise sequence of the series of events described is unclear, the events all appear to have occurred in late September and early October, 2021. Peterson alleges that during the week of September 20-24, 2021, he asked a female trainee guard to open the D-Unit door to allow him access to insulin distribution. (*Id.* at 16.) The trainee is alleged to have ignored Peterson, instead walking away to engage in a private conversation. (*Id.*) After obtaining his insulin, Peterson alleges that he informed the assigned Sargent of the incident, whereupon the Sargent removed the trainee from her assignment in D-Unit and placed her in an unassigned position in the kitchen. (*Id.*) On September 19, Peterson filed a grievance against the trainee, who he mistakenly identified as non-defendant CO Hall; he later corrected the grievance to reflect that the trainee was Defendant Watson. (*Id.* at 30.)

     Peterson alleges that on September 19, 2021, when he was in the insulin line, Defendant Elby told Peterson that Watson had told Elby what Peterson had done, and Elby then called Peterson a "rat," "snitch," and "informant" in front of other guards, causing a commotion. (*Id.*) Elby is also alleged to have told Peterson that guards stick together, and that Elby's wife was Lt. White, who was assigned to security, so that Elby would find out about any complaint that Peterson filed. (*Id.*) Peterson claims that Elby then requested Defendant Watson to follow Peterson from the medication line to the D-Unit yard and request his identification on the basis he was in an unauthorized area. (*Id.* at 17.) Peterson did not have his identification, so Watson followed Peterson to his cell block and requested that non-defendant Sargent Paul commence a misconduct against Peterson. (*Id.*) Watson did not submit the misconduct provided by Sargent Paul, but reported to Peterson that Elby had called Peterson a "rat" in front of SCI-Phoenix staff, and that Peterson was a "pussy" because he did not respond. (*Id.*)

2

Peterson alleges that when Elby learned that Watson did not submit the misconduct obtained from Sargeant Paul, Elby told Watson how to write and submit a false misconduct accusing Peterson of engaging in sexual misconduct against Watson. (*Id.* at 18.) Watson submitted a false misconduct to this effect on September 28 (*id.* at 29), and Peterson claims that Elby was excited when Watson submitted the misconduct, because the potential punishment for a guilty finding on sexual misconduct charges included at least 6 months of solitary confinement, loss of employment, and possible criminal charges. (*Id.* at 18.) Elby was allegedly upset when the false misconduct was dismissed upon review the day after it was filed. (*Id.* at 18, 29.) Elby proceeded to convince Watson to submit a second false misconduct again alleging sexual misconduct against Peterson, and to encourage Defendant Kennizan to continue to spread the rumor that Peterson was a "rat." (*Id.* at 19.) The second misconduct was submitted on September 29 and dismissed with prejudice on October 4 following a hearing at which Peterson presented evidence.[2] (*Id.* at 19, 23, 29.)

Peterson alleges that on September 29, following Elby's directions, Kennizan called Peterson a "rat," and sang a "rat/snitch/informant" song he made up in front of several SCI-Phoenix staff. (*Id.* at 21.) Peterson alleges he immediately reported the incident. (*Id.*) He also filed a grievance against Kennizan that day. (*Id.* at 30.) Later, when Peterson was obtaining his daily anti-psychotic medication, Kennizan is alleged to have told Peterson that Elby and Watson told him that Peterson was a rat, and that Kennizan should do whatever he could to let as many staff as possible know that Peterson was a rat. (*Id.* at 21.) Peterson alleges that on October 7, 2021, he was in line to obtain a flu shot when Kennizan began calling Peterson a rat. Peterson

---

[2] Peterson claims that he presented "documents and data" to the Pennsylvania DOC Head Hearing Examiner at Central Offices regarding the second false misconduct filed against him, and that it was dismissed with prejudice. (*Id.* at 19, 23.) He asserts that he provided evidence of Elby's efforts, with the assistance of Watson and Kennizan, to violate Peterson's rights. (*Id.*)

alleges he required an escort to safely obtain his flu shot, and to safely return to his cell. (*Id.* at 22.)

Peterson claims that on September 19, 22, 23, 28 and 29, and continuing through the filing of his Complaint, Elby compromised Peterson's safety by soliciting Watson and Kennizan to participate in his plan to subject Peterson to cruel and unusual punishment through the filing of false misconducts and labelling him a "rat." (*Id.* at 20.) Peterson claims that the purpose of Elby's plan was to impress Watson, because he was interested in her and wanted to impress her by showing his ability to retaliate against Peterson. (*Id.*)

Peterson alleges that on September 19, 22, 23, 28, and 29, without the knowledge of Elby or the other Defendants, he filed PREA complaints against Defendant Watson, claims under "Pa. DOC B11/OPR", and criminal complaints with the Pennsylvania Attorney General's Office and the Montgomery County District Attorney. (*Id.* at 18-19.) Peterson refers in his Complaint to a State court action pending in Montgomery County Court of Common Pleas against Defendant Elby and Watson (*Id.* at 9.) He claims he alleged that Elby "masterminded and activated" a plan of cruel and unusual punishment against Peterson, whereby Peterson would be assaulted or killed as a result of Elby stating that Peterson had ratted on a Phoenix staff member. (*Id.* at 19.) Peterson also alleges that he advised SCI-Phoenix Warden Sober, Deputy Sipple, Deuty Terrea, Major Clark and Major Terrea, and Deputy Bradley of security about the incidents. (*Id.* at 22.) He also claims he requested private criminal complaints from the Pennsylvania Attorney General's Office, the Montgomery County Regional FBI, and the Montgomery County District Attorney's Office. (*Id.*) He does not provide any facts as to the results of these requests.

Peterson alleges that the Defendants deliberately engaged in the course of conduct described in an effort to cause staff and inmates to assault or otherwise cause Peterson harm. (*Id.* at 25.) He also claims they interfered in the investigations requested by Peterson, in an effort to

4

block identification of Elby as the mastermind of the plan, and Watson and Kennizan as the "puppets." (*Id.*) Peterson alleges that their conduct constituted cruel and unusual punishment and deprived him of reasonable safety. (*Id.* at 26.) He alleges that the conduct engaged in by the Defendants was illegal, in contravention of Pennsylvania DOC and SCI-Phoenix routine, and was not engaged in to preserve order or security. (*Id.*) He further alleges that all of the Defendants participated in the alleged wrongs, and that none of them attempted to stop the alleged wrongs. (*Id.* at 27.) Peterson alleges that the Defendants' conduct was not in accordance with any policy of the Pennsylvania DOC. (*Id.* at 28.)

Based on the foregoing, Peterson asserts violations of his Eighth and Fourteenth Amendment rights, and violations of the Equal Protection clause.[3] (*Id.* at 3, 4.) He also asserts retaliation claims. He seeks recovery of compensatory and punitive damages from each Defendant.[4] (*Id.* at 5.)

---

[3] "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, Peterson must allege that he was treated differently than other similarly situated individuals, and that this different treatment was the result of intentional discrimination based on his membership in a protected class. *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). Although Peterson alleges that he was discriminated against ased on his gender, (ECF No. 1 at 27), he does not provide factual allegations in support of that assertion. Since the Complaint contains no allegations that would make an equal protection claim plausible, Peterson's Equal Protection claims will be dismissed.

[4] Peterson also includes a request for appointment of counsel in his Complaint. (*Id.* at 5.) If Peterson seeks appointment of counsel, he must file a motion that addresses the factors set forth in *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993).

## II. STANDARD OF REVIEW

Because Peterson appears to be unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Peterson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[5] Because Peterson is a prisoner, under the provisions of the Prison Litigation Reform Act, he must still pay the full filing fee in installments.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.  Official Capacity Claims

Peterson asserts claims against the Defendants, all of whom are employees of the Pennsylvania DOC, in their official capacities. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Peterson therefore cannot state a plausible claim against the named Defendants in their official capacities, and these claims will be dismissed with prejudice.

### B.  Due Process Claim Based on False Misconducts

Peterson claims that Defendant Watson, with the assistance of Defendant Elby, filed false misconducts against him, in violation of his due process rights. Lodging a false accusation is not a sufficient basis for a due process claim. *See London v. Evans*, No. 19-559, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the

7

charges."). Moreover, while "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Peterson alleges that the first false misconduct was summarily denied the day after it was filed. (*Id.* at 18, 29.) The filing of that misconduct, as a result, does not appear to have resulted in any adverse effect on Peterson that could be considered an atypical or significant hardship, and, therefore, does not provide a basis for a plausible claim. Peterson alleges that he appeared at a hearing regarding the second misconduct, and presented "evidence and data" about the conduct of Defendants Elby, Watson, and Kennizan. (ECF No. 1 at 19, 23.) Following the hearing, the misconduct was dismissed with prejudice. (*Id.* at 19, 23, 29.) Because Peterson was afforded an opportunity to be heard and defend against the allegedly false misconduct, he cannot state a plausible due process claim. Peterson's claims based on the filing of allegedly false misconducts will be dismissed with prejudice.

### C. Claims Based on Being Labelled a "Rat," "Snitch," and "Informant"

Peterson alleges that the Defendants Elby labelled him a "rat," "snitch," and "informant," with the intent that SCI-Phoenix staff or inmates would harm Peterson, and that this deprived him of safety and constituted cruel and unusual punishment in violation of his Eighth Amendment rights. The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir.

2005).  Unconstitutional punishment includes both objective and subjective components.  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell v. Wolfish*, 441 U.S. 520 538-39, 539 n.20 (1979)).  The objective component requires the prisoner to establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement.").  Such necessities include food, clothing, shelter, medical care and reasonable safety.  *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  The subjective component requires the prisoner to assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Courts in the Third Circuit have recognized that being labeled a 'snitch' may constitute an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate."  *Williams v. Thomas*, No. 12-1323, 2013 WL 1795578, at *5 (E.D. Pa. Apr. 20, 2013) (citations omitted); *see also Woolfolk v. Meier*, No. 17-3513, 2018 WL 1773397, at *3 (E.D. Pa. Apr. 12, 2018) (prisoner called "snitch" by corrections officer in front of inmates stated Eighth Amendment violation and corresponding substantive due

process violation under Fourteenth Amendment). Peterson alleges that the Defendants called him a "rat" and a "snitch" in front of SCI-Phoenix personnel with the intent that they would assault or otherwise harm him. (ECF No. 1 at 25.) Peterson adequately states a plausible Eighth Amendment claim against Defendants Elby and Kennizan and this claim will be served for a responsive pleading.

      D.      **Retaliation Claims**

Peterson also asserts retaliation claims against the Defendants. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020). A prisoner's filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)).

Peterson alleges that Defendant Watson ignored his request that she open a door to permit him access to insulin distribution, and that he both immediately reported this conduct and filed a grievance about it. He further alleges that Defendant Elby, upon learning of this, called Peterson a "rat," snitch," and "informant," and told him that guards stick together. Peterson also alleges that Defendants Elby and Watson together prepared, and that Defendant Watson submitted, false misconducts against Peterson. He also alleges that Defendant Kennizan, at the request of Defendant Elby, called Peterson a "rat" in front of other SCI-Phoenix personnel. Peterson alleges that the conduct of Watson, Elby and Kennizan was in response to his initial complaint

10

about Watson, and was intended to place him in danger of harm.[6]  Peterson's allegations that the Defendants engaged in a course of conduct designed to place him in danger of physical harm as a result of being called a snitch, and to place him in danger of punishment including loss of housing and prison employment in the event he was found guilty of the false misconducts filed against him, because he reported their conduct to authorities state a plausible claim for retaliation and this claim will be served for a responsive pleading.

## IV.  CONCLUSION

For the reasons stated, Peterson's application for leave to proceed *in forma pauperis* will be granted.  Peterson will be permitted to proceed with his First Amendment retaliation claim, and his Eighth Amendment cruel and unusual punishment claim against all Defendants.  Peterson's Fourteenth Amendment Due Process claim, and his official capacity claims against the named Defendants will be dismissed with prejudice.  Peterson's Equal Protection claim will be dismissed without prejudice.  Service will proceed at this time.  An Order follows, which shall be docketed separately.

---

[6] Peterson alleges that he both immediately reported Defendant Kennizan and filed a grievance against him based upon Kennizan calling him a "rat." (ECF No. 1 at 21, 30.)  His allegations also suggest that he requested an investigation into Defendant Elby's conduct. (*Id.* at 25.)  It is unclear from the Complaint whether Peterson is claiming that these actions were the cause of any of the Defendants' conduct.